UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TAWANDA GREER-MEDLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.  3:20-cv-01369-GCS |
| | ) |
| BOARD OF TRUSTEES OF | ) |
| SOUTHERN ILLINOIS UNIVERSITY, | ) |
| | ) |
| Defendants | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

### I.   INTRODUCTION

On December 24, 2020, Plaintiff Tawanda Greer-Medley filed a one count complaint against the Board of Trustees of Southern Illinois University ("the Board") for race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et* seq. as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a. (Doc. 1). Specifically, Plaintiff, an African American female, and former Associate Professor at Southern Illinois University Carbondale, alleges that she was denied promotion to full professor because of her race.

Now before the Court is Defendant's motion for summary judgment. (Doc. 38, 42). Defendant argues that the undisputed record does not create a triable issue of fact and that a reasonable jury would not conclude, based upon Plaintiff's scholastic record, that the recommendation to deny her a promotion would have changed if Plaintiff was white.

Plaintiff opposes the motion. (Doc. 41). Based on the applicable law, the record before the Court, and the reasons delineated below, the Court **DENIES** the motion for summary judgment.

## II.  FACTS

The following material facts are undisputed except where noted. All facts are taken in a light most favorable to Plaintiff. *See National American Ins. Co. v. Artisan and Truckers Cas. Co.*, 796 F.3d 717, 722-723 (7th Cir. 2015).

Plaintiff, Tawanda Greer-Medley, an African American female, was an Associate Professor in the Department of Psychology in the College of Liberal Arts ("COLA") at the Southern Illinois University ("SIU") Carbondale Campus. In 2014, SIU hired Plaintiff as an Associate Professor through an initiative to promote diversity. In 2014, Dr. Meera Komarraju was the Chair of the Psychology Department. Dr. Komarraju was instrumental in hiring Plaintiff through the qualified diversity initiative. Plaintiff started with SIU in 2015 and was required to seek tenure during the 2018-2019 academic year. Plaintiff was the only African American member of the Psychology faculty from 2015 until 2020 when she left SIU.

During this timeframe, Dr. Komarraju progressed from being the Chair of the Psychology Department, to becoming Dean of the COLA, and then to becoming the Provost of SIU. As Provost, Dr. Komarraju was responsible for making recommendations as to tenure or promotion for all faculty seeking advancement. Currently, Andrew Balkanksy is the Dean of the COLA.

Faculty are divided into three ranks: Assistant Professor, Associate Professor, and Professor. When seeking tenure and/or promotion, the faculty member compiles a dossier of the record of scholarship, teaching, and service. Each dossier is reviewed by multiple faculty members including a department committee ("Department Committee"), the Department Chair, a college committee ("College Committee"), and the College Dean. In the final step of the review process, the dossier is independently reviewed by the Provost for a determination. If an applicant receives a positive recommendation from the Provost, the request is submitted to the Board of Trustees for ratification.

During the 2018-2019 academic year, Plaintiff sought the mandatory tenure review and evaluation for promotion to full Professor. Plaintiff's dossier was reviewed by the Department Committee, who unanimously provided a positive recommendation for tenure with a 10-0 vote. The Department Committee also unanimously recommended promotion to full Professor with a 5-0 vote. The Acting Department Chair agreed. The College Committee unanimously recommended Plaintiff for tenure with a 5-0 vote. However, the College Committee did not recommend Plaintiff for promotion to full Professor with a vote of 0-4 and one abstention. Similarly, Dean Balkansky recommended Plaintiff for tenure and did not recommend Plaintiff for promotion to full Professor. Thus, Plaintiff disputed the negative promotion recommendation. After reviewing all the information, Dr. Komarraju recommended Plaintiff for tenure but not for promotion to full Professor. Plaintiff submitted a grievance regarding the denial of the promotion. Dr. Komarraju denied Plaintiff's grievance, and the Judicial Review Board upheld the denial of Plaintiff's grievance. In the summer of 2020, Plaintiff voluntarily left SIU.

During the same time frame Plaintiff sought promotion to full Professor, Dr. Michelle Kibby ("Dr. Kibby"), a white female Associate Professor in the Department of Psychology, also sought promotion to full Professor. Dr. Kibby received unanimous votes for promotion to full Professor from the same Department Committee, Chair, College Committee, and the Dean. Dr. Komarraju approved the recommendation, and Dr. Kibby received the promotion to full Professor. Also, during this period, another white female, Dr. Gretchen Dabbs ("Dr. Dabbs") applied for promotion to full Professor in the Department of Anthropology within the COLA. Dr. Dabbs received a unanimous negative vote on whether she met the standards for promotion to full Professor. Despite this unanimous negative vote, Dr. Dabbs was promoted to full Professor.

### III.　SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)(citing *Celotex*, 477 U.S. at 323). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). *See also Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009)(stating that "we are not required to draw every conceivable

inference from the record . . . we draw only reasonable inferences") (internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of her claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in fact-finding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in her pleadings; rather, she must show through specific evidence that an issue of fact remains on matters for which she bears the burden of proof at trial. *See Walker v. Shansky*, 28 F.3d 666, 670–671 (7th Cir. 1994), aff'd, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). In other words, "inferences relying on mere speculation or conjecture will not suffice." *Trade Finance Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (internal citation omitted).

Finally, at the summary judgment stage it is not the Court's role to "sift through the

evidence, pondering the nuances and inconsistencies, and decide whom to believe." *D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015) (citing *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). *See also Boss v. Castro*, 816 F.3d 910, 914 (7th Cir. 2016)(noting that courts are not required to scour the record looking for factual disputes or piece together appropriate arguments). Instead, the Court "is only tasked with deciding whether, based on the evidence of the record, there is any material dispute of fact that requires a trial." *Buell*, 796 F.3d at 756.

### IV. DISCUSSION

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "[T]he singular question that matters in a discrimination case [is]: 'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the . . . adverse employment action[.]'" *Johnson v. Advocate Health and Hospitals Corp.*, 892 F.3d 887, 894 (7th Cir. 2018) (quoting *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). A plaintiff must provide such evidence in order to survive summary judgment. *See Milligan-Grimstad v. Stanley*, 877 F.3d 705, 710 (7th Cir. 2017).

A plaintiff may rely on both direct and circumstantial evidence to support an inference of causation and intent. *See Joll v. Valparaiso Community Schools*, 953 F.3d 923, 929 (7th Cir. 2020). A plaintiff can also "enlist the burden-shifting framework of *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973)]" "[t]o clarify and to simplify [his] task." *Joll*, 953

F.3d at 929 (quotation and citation omitted). The Court's focus is to "consider[ ] [the evidence] as a whole, rather than asking whether any particular piece of evidence proves the case by itself – or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Golla v. Office of Chief Judge of Cook County, Ill.*, 875 F.3d 404, 407 (7th Cir. 2017) (quoting *Ortiz*, 834 F.3d at 765). In determining whether the evidence would permit a reasonable factfinder to conclude that Plaintiff's race caused her to be treated unfairly, "the burden-shifting framework of *McDonnell Douglas* remains relevant as a means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases." *Owens v. Old Wisconsin Sausage Co., Inc.*, 870 F.3d 662, 667 (7th Cir. 2017) (quotation and citation omitted). The Court, however, "review[s] the evidence holistically to see if it permits an inference of race discrimination." *Lloyd v. Mayor of City of Peru*, No. 18-2410, 761 Fed. Appx. 608, 610 (7th Cir. Mar. 4, 2019). "[A]l evidence belongs in a single pile and must be evaluated as a whole." *Igasaki v. Ill. Department of Financial and Professional Regulation*, 988 F.3d 948, 957 (7th Cir. 2021) (citation and quotation omitted).

Under the *McDonnell Douglas* framework, a plaintiff must "make a prima facie case of discrimination, at which point the burden shifts to the employer to offer a nondiscriminatory motive, and, if the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext." *Purtue v. Wisconsin Department of Corrections*, 963 F.3d 598, 601-602 (7th Cir. 2020). That the "individuals ultimately hired were better candidates" constitutes a legitimate, nondiscriminatory reason for refusing to hire a plaintiff. *Marnocha v. St. Vincent Hospital and Health Care Center, Inc.*,

986 F.3d 711, 721 (7th Cir. 2021); *see also Chatman v. Board of Education of City of Chicago*, 5 F.4th 738, 747 (7th Cir. 2021).

Under recent Seventh Circuit precedent, the Court may also proceed with an alternative framework which simply asks "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [membership in a protected class] . . . caused the discharge or other adverse employment action" at issue. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *see also Nigro v. Indiana University Health Care Associates, Inc.*, 40 F.4th 488, 491 (7th Cir. 2022). Under this framework, courts are to assess the evidence as a whole, rather than asking whether any particular evidence proves the case by itself. *See Lewis v. Indiana Wesleyan University*, 36 F.4th 755, 760 (7th Cir. 2022). Here, the Court will evaluate Plaintiff's claim under both frameworks.

First, there is no claim that Dr. Komarraju or any other person with authority to fire or influence the terms of Plaintiff's employment stated that Plaintiff did not receive the promotion to full Professor because she is African American. As such, to succeed on her claim, Plaintiff must make out a prima facie case. To make a prima facie case under the *McDonnell Douglas* framework, a plaintiff must show: (1) she belongs to a protected class; (2) she met his employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) another similarly situated employee outside of her protected class received better treatment from her employer. See *Marshall v. Indiana Department of Correction*, 973 F.3d 789, 791-792 (7th Cir. 2020). If Plaintiff establishes the elements of the prima facie case, the burden shifts to Defendant to show it had a legitimate, non-discriminatory reason for the adverse action. *See David v. Board of Trustees of Community College Dist. No. 508*, 846 F3d

216, 225 (7th Cir. 2017). If Defendant meets its burden, Plaintiff must then show the stated reason is merely a pretext for discrimination. *Id*.

Here, there is no question that Plaintiff is a member of a protected class and that she suffered an adverse job action.[1] Instead, the parties dispute whether Plaintiff has offered sufficient evidence on the remaining elements to withstand summary judgment.[2] The Court concludes that she has.

Plaintiff argues that similarly situated employees were treated more favorably. Another employee is "similarly situated" to Plaintiff if she is "directly comparable to [her] in all material aspects." *Peele v. Country Mutual Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002) (citation and internal quotation marks omitted). The comparison should not require identical characteristics but should be a "flexible, common-sense examination of all relevant factors." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (citation and internal quotation marks omitted). "[T]he inquiry simply asks whether there are sufficient commonalities on the key variables between plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination . . . ." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007).

---

[1] In fact, Defendant admits that she has established these two elements.

[2] Because the question of whether Plaintiff was meeting the legitimate expectations of her employer and pretext overlap, the Court will consider them together. *See, e.g.*, *Bodenstab v. County of Cook*, 569 F.3d 651, 657 (7th Cir. 2009)(stating that "[w]hile the question of pretext arises only after a plaintiff has established a prima facie case of discrimination and the employer has countered with a legitimate non-discriminatory reason for the adverse action, we can skip over the initial burden-shifting of the indirect method and focus on the question of pretext.").

As for comparators, Plaintiff identified Dr. Kibby and Dr. Dabbs. Dr. Kibby, a white female in the same department and college, applied to be a full professor in the same academic cycle as Plaintiff. Both Plaintiff and Dr. Kibby received a unanimous vote for promotion from the originating Academic Unit, *i.e.*, the Psychology Department. However, Dr. Kibby was promoted to full professor and Plaintiff was not. Dr. Dabbs, a white female in a different department but in the same college, was also promoted to full professor during this academic cycle. Dr. Dabbs, however, had a unanimous negative vote from the originating Academic Unit, *i.e.*, the Anthropology Department. Nevertheless, she too was promoted to full professor.

Defendant argues that Dr. Kibby and Dr. Dabbs are not appropriate comparators because there were differences in their backgrounds and experience that warranted their promotion. Of course, the Defendant may rely on that explanation as its non-discriminatory reason to justify its actions. The evidence in the record, however, shows that Dr. Kibby and Dr. Dabbs are indeed appropriate comparators. As an initial matter, SIU's Promotion Policies and Procedures indicate that the evaluation of promotion requests are handled by the home department of the professor. The policy states the following:

> Recommendations for promotion originate with the basic academic unit. . . . the ***primary responsibility of evaluating individual promotion requests*** in terms of [applicable] standards shall be assigned to the faculty in the academic unit(s) in which the request for promotion is made. ***Once the faculty has made its evaluation and recommendations, the results should be reversed only for reasons which are stated in detail,*** showing evidence of deliberate and thoughtful review derived from a full and fair consideration of the promotion case.

(Doc. 41-2, p. 3) (emphasis added). The above language clearly indicates that the department makes the initial determination of whether an individual is qualified to receive

a promotion to full professor. In the case of Plaintiff and Dr. Kibby, the basic academic unit is their home department, *i.e.*, the Department of Psychology. Both were evaluated on the required criteria of scholarly accomplishments, teaching accomplishments, and service accomplishments. Both received unanimous 5-0 votes for promotion to full professor from the department's committee, and both received a positive recommendation from the Chair of the Department of Psychology for the promotion. Because both Plaintiff and Dr. Kibby were evaluated by the same department as having the requisite credentials for promotion and because both received a unanimous vote, they are similarly situated.

To be fair, there are differences between Plaintiff and Dr. Kibby, but that is to be expected in the field of academia. An examination of the available record in the light most favorable to the Plaintiff, however, confirms they are comparable. For example, the department chair's recommendation for Plaintiff and Dr. Kibby outlined their respective accomplishments. With respect to the teaching component, both received similar ratings in their course evaluations. Plaintiff received scores ranging from 3.56 to 4.71 on a 5 point scale, and Dr. Kibby received scores averaging from the high 3.X range into the mid-4.X range. (Doc. 38-13, p. 7; Doc. 38-24, p. 6). As to scholarly accomplishments, both Plaintiff and Dr. Kibby were lead authors in 16 journal publications. (Doc. 38-13, p. 4; Doc. 38-24, p. 3). Their written product totals are also similar as Plaintiff can point to 21 discrete works and Dr. Kibby can point to 26. (Doc. 38-13, p. 4; Doc. 38-24, p. 3). This difference is not that significant given that Plaintiff's academic career began in 2005 as an Assistant Professor at the University of South Carolina, whereas Dr. Kibby's career began earlier in 2001 as an Assistant Professor at Washington State University. (Doc. 38-32, p. 2; Doc. 38-33, p. 2). An

argument could also be made that Plaintiff's written scholarship is more impressive as she has a much higher percentage than Dr. Kibby of being the lead or sole author on articles. In terms of grants, Plaintiff has received four and Dr. Kibby has received five. (Doc. 38-32, p. 4; Doc. 38-33, p. 5). While Dr. Kibby's total grant dollar amounts are considerably higher, due to one large grant, she has only submitted two grants post-tenure. (Doc. 38-33, p. 5). Plaintiff, on the other hand, has submitted seven grants post-tenure. This disparity is interesting given the fact that Dr. Kibby's post-tenure period is eight years, while Plaintiff's post-tenure period is three years. Finally, both Plaintiff and Dr. Kibby have guided a similar number of students to Master's Theses and/or Doctoral Dissertation completions, with Plaintiff guiding 10 different students and Dr. Kibby guiding 13 different students. (Doc. 38-32, p. 10; Doc. 38-33, p. 24). Based on this and the other evidence in the record, a reasonable jury could conclude that Dr. Kibby and Plaintiff were similarly situated employees. Dr. Kibby not being in the same protected class as Plaintiff did receive better treatment in that she was promoted to full professor and Plaintiff was not, thus satisfying the fourth element of the *McDonnell Douglas* analysis.

Plaintiff has also identified Dr. Dabbs as a comparator. Dr. Dabbs is from a different department, but from the same college. Dr. Dabbs and Plaintiff also sought promotion to full professor after having served as an Associate Professor for a similar period of time. The original academic unit for Dr. Dabbs is the Department of Anthropology, and a review of the record reveals that the criteria for promotion were generally the same. In fact, Dr. Dabbs had to go through the exact same procedure as Plaintiff and Dr. Kibby, by first being evaluated and getting recommended from her home department. They part company,

however, in the fact that the Department of Anthropology concluded that Dr. Dabbs was not qualified for a promotion. Despite the negative vote of the Department Committee and the lack of a positive recommendation from the department chair, Dr. Dabbs was promoted to full professor.

Based on SIU's promotion policy, however, Dr. Dabbs arguably should never have been promoted. As noted previously, the promotion policy states that **"[r]ecommendations *for promotion*** originate with the basic academic unit." (Doc. 41-2, p. 3) (emphasis added). The plain language clearly says, "recommendations *for* promotion," not recommendations regarding promotion. The promotion policy also provides that the primary responsibility for evaluating promotion requests rests with the home department of the candidate. Indeed, this provision makes perfect sense as the faculty in the applicant's home department will be the ones most familiar with the applicant's work and qualifications. Thus, when these two provisions are read together, no promotion to full professor should be made without a recommendation *for* promotion from the home department. Yet, despite the clear language of this policy, Dr. Dabbs was promoted to full professor.

SIU's promotion policy also lays out the general criteria for promotion, the first of which is teaching effectiveness. The policy specifically states: "[u]nless a determination is made that the candidate is an effective teacher, *whether at the departmental or interdisciplinary level*, promotion will not be granted." (Doc. 41-2, p. 2). The Anthropology Department did not believe Dr. Dabbs met the criteria for teaching. The department chair's letter noted the following problems:

- "she has not made equally strong contributions to the more general teaching

- mission of the Department.";

- "[she] has not demonstrated an ability to guide [] students toward completion of their graduate degrees as required by departmental promotion criteria."; and

- "The Committee is also very concerned about the large number of graduate advisees who have left Dr. Dabbs for other faculty advisors in the Department or for graduate programs at other universities . . . since her promotion to Associate Professor."

(Doc. 38-28, p. 5, 6, 8). Dr. Dabbs did not get the departmental approval she needed in the critical category of teaching, and yet she was promoted anyway. By comparison, Plaintiff's Department Committee unanimously believed that she met the required criteria, but Plaintiff did not get promoted. The use of Dr. Dabbs as a comparator is thus useful for Plaintiff as a point of contrast from her situation to show that someone not in the protected class was treated more favorably than her.

Turning to the issue of pretext, Plaintiff agrees that Defendant has articulated a nondiscriminatory reason for not promoting her. Specifically, Defendant contends that Plaintiff did not qualify for promotion to full professor because she did not publish enough articles/publications. The question then turns to whether there is any evidence in the record indicating that the proffered explanation was a pretext or "an attempt to mask a discriminatory reason with a legitimate excuse." *Crain v. McDonough*, No. 22-1714, 2023 WL 2546446, at *4 (7th Cir. Mar. 17, 2023) (quotation and citation omitted). "Pretext is not 'just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action.'" *Id.* (quoting *Burton v. Board of Regents of University of Wis. System*, 851 F.3d 690, 698 (7th Cir. 2017). Here, the Court finds that when read in the light

most favorable to the Plaintiff, there is evidence in the record to support the existence of pretext.

Defendant explained that Plaintiff was not promoted because she did not publish enough. However, a comparison of Plaintiff and Dr. Kibby shows that their publication rate was nearly identical. In fact, Plaintiff's publication rate was slightly higher. *See, e.g.*, (Doc. 38-25, p. 3)(noting that Dr. Kibby's publication average was "less than one peer-reviewed article per year . . . ."); (Doc. 38-25, p. 3)(noting that Plaintiff's publication rate was "1.4 per year[.]"). With respect to Dr. Kibby, Dean Balkansky noted this problem indicating that this rate "may seem a bit low." (Doc. 38-25, p. 3). However, Dean Balkansky dismissed this issue stating, "I am less concerned about the productivity issues, given Dr. Kibby's high profile funding commitments, and the clear involvement (and heavy investment of time) in mentoring/collaborating on student research . . . ." *Id.* at p. 3-4. The department chair's recommendation for Dr. Kibby and Plaintiff noted the reasons for the seemingly low productivity rate for the two. *See, e.g.*, (Doc. 38-24, p. 5)(noting that the "volume and pace" of Dr. Kibby's productivity was consistent given "the total context of [her] workload" specifically "her high level of indirect teaching and service commitments[.]"); (Doc. 38-13, p. 6)(noting similar productivity issues with Plaintiff but explaining that her work load was much higher due to an understaffed department). When Dean Balkansky recommended Dr. Kibby for promotion, the specific demands on her time were referenced as a legitimate explanation for her low productivity rate. Yet, when Dean Balkansky did not recommend Plaintiff for promotion, Plaintiff's increased workload and responsibilities were ignored as a possible mitigating factor for her productivity rate. In fact, when pressed on this point in

his deposition, Dean Balkansky seemed to dismiss these workload considerations as "not a relevant factor." (Doc. 38-4, p. 40). Dean Balkansky further explained that it was not relevant "[b]ecause you have to produce the research for it to count. Other faculty that go up for promotion also teach and also have advisees." *Id.* Yet, Dean Balkansky clearly considered similar workload issues when he recommended Dr. Kibby for promotion.

Based on this record and when read in the light most favorable to the Plaintiff, a reasonable jury could find that Defendant's explanation for not promoting Plaintiff is in fact false, and it could readily infer that Defendant discriminated against Plaintiff because of her race when it denied her promotion to full Professor. The Court, however, likewise finds that a reasonable jury could find the opposite. But, at this stage of the litigation, there is sufficient evidence in the record for the Plaintiff to survive summary judgment.

Lastly, the Court evaluates Plaintiff's claim under the framework established in *Ortiz*. Under *Ortiz*'s approach to view the evidence holistically, the Court similarly finds that Plaintiff created a triable issue of fact on her discrimination claim. Defendant insists that Plaintiff was not promoted because she was not qualified for the position in that she did not publish enough articles/publications. However, Plaintiff contends that the inconsistency in SIU's explanation as to its nondiscriminatory reason is demonstrated when Defendant ignored the unanimous vote of Plaintiff's Department Committee (Psychology) in favor of promoting an African American associate professor to full professor, while accepting the unanimous vote of the same Department Committee in favor of voting for promotion to full professor for a white Associate Professor. Plaintiff also argues that further evidence of the inconsistency of Defendant's explanation can be seen with the promotion

to full Professor of Dr. Dabbs, a white female, who did not receive the unanimous vote of the Department Committee (Anthropology). Indeed, this fact is particularly problematic for Defendant because Dr. Dabbs arguably should not have been promoted in the first place in light of SIU's stated policies. While Defendant may have a reasonable explanation or interpretation of its own policies that would justify this action, it seems to fly in the face of the plain language of such policies. *See, e.g., Crain*, 2023 WL 2546446, at *5 (noting that "employer's misinterpretation of a policy or regulation is generally only evidence of pretext where it is so far afield to be unworthy of credence.") (citing *Huff v. Buttigieg*, 42 F.4th 638, 648-649 (7th Cir. 2022)). The inconsistent application of workloads to justify the lower publication rate for Dr. Kibby, but not for Plaintiff further reinforces this notion that discriminatory animus may have motivated the decision. Viewed as a whole, the record permits a reasonable jury to conclude that Plaintiff's race caused the denial of her promotion to full Professor.

## V.  CONCLUSION

For the above-stated reasons, the undersigned **DENIES** Defendant's motion for summary judgment. (Doc. 38). The Court **DIRECTS** the Clerk of the Court to set this matter for telephone status conference to discuss potential trial dates. Further, the parties shall contact the undersigned's chambers if they feel a settlement conference would be beneficial.

**IT IS SO ORDERED.**

**DATED: March 31, 2023.**

Digitally signed by Judge Sison 2
Date: 2023.03.31 13:24:49 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**